BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

MATTHEW L. McCARTHY (CABN 217871)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6838
    Fax: (415) 436-6982
    Matthew.McCarthy@usdoj.gov

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ERIC EDGAR, <br><br> Defendant. | CASE NO. CR 14-0275 CRB <br><br> UNITED STATES' SENTENCING MEMORANDUM; MOTION FOR AN UPWARD VARIANCE <br><br> Hearing Date: January 11, 2017 <br> Time: 10:00 a.m. <br><br> Hon. Charles R. Breyer |

**INTRODUCTION**

Defendant Eric Edgar pleaded guilty to a violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(vii) – Conspiracy to Manufacture, Possess with Intent to Distribute, and Distribute Marijuana, specifically, 100 or more marijuana plants. The defendant and the United States entered a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), under which the parties agreed to recommend a sentence of 84 months' imprisonment, followed by 10 years of Supervised Release.

The U.S. Probation Office prepared a Presentence Investigation Report, which correctly calculated the defendant to have a Criminal History Category of III and an adjusted offense level of 21. The defendant's offense has a mandatory minimum term of 60 months, which is higher than the 46-57 month range ordinarily provided for an offense level of 21 and a CHC III, so the Guidelines range is 60 months. The U.S. Probation Office has recommended that the Court impose the 84 month sentence agreed upon by the parties. The Government respectfully joins in the recommendation.

## LEGAL STANDARD AT SENTENCING

Under Ninth Circuit case law, the Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct guidelines range. *Carty*, 520 F.3d at 991.

Although the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *United States v. Rita*, 127 S. Ct. 2456, 2464 (2007). The guidelines range will be the starting point and the initial benchmark for the sentence. *Carty*, 520 F.3d at 991. The Court should keep the guidelines range in mind throughout the process, allow the parties to argue for a sentence they believe is appropriate, and consider the factors identified in 18 U.S.C. § 3553(a). *Id.*

If the Court imposes a sentence outside the guidelines range, it should ensure that its justification for deviating from the range is sufficiently compelling to support the degree of variance in the sentence that it imposes. *Carty*, 520 F.3d at 991. The Court should make an individualized determination based on the facts of each case. *Id*. The Court, however, is not required to raise every possible relevant issue sua sponte. *Id*.

A.  **The Correct Guidelines Range Is 60 Months**

    1.  **The Guidelines Calculation**

The government believes that the following sentencing guidelines calculation is correct:

    a. Base Offense Level, U.S.S.G. § 2D1.1(c)(8) + (a)(5)(A) :     24

|   |   |   |
|---|---|---|
| b. Amount of Drugs: | | 1,300 plants of marijuana |
| c. Acceptance of Responsibility: | | -3 |
| e. Adjusted Offense Level: | | 21 |

The Probation Office agrees with this Offense Level.  (PSR ¶ 29.)

### 2. The Defendant's Criminal History Category Is CHC III

Based on prior convictions, including for a drug trafficking offense, the Probation Office calculated the defendant to have a Criminal History Category of III.  (PSR ¶¶ 33-43.)  The government agrees with this calculation.

### 3. The Correct Guidelines Range Is 60 Months

While the Guidelines normally produce a range of 46-57 months for an adjusted offense level of 21 and a CHC of III, the Guidelines range for the defendant's offense is set at 60 months, which is the statutory minimum sentence under 21 U.S.C. § 841(b)(1)(B)(vii) (100 or more marijuana plants).  *See* U.S.S.G. § 5G1.1(b); (PSR ¶ 70).

## B. A Sentence of 84 Months Imprisonment Satisfies the Statutory Factors Set Forth in § 3553(a)

The government believes that a significant prison sentence, above the ordinary guidelines range, is warranted in this case.  To begin with, section 3553(a)(1) directs the Court to consider the nature and circumstances of the offense.  The nature and circumstances of this offense are far outside the "ordinary" marijuana-related prosecutions in this District.

As set forth in the PSR, Edgar was hired by Ryan Balletto to tend a large marijuana grow in Lake County, California.  (PSR ¶ 13.)  Edgar expected to be paid $40,000 to $50,000 for his work, which included tending to over 1,300 plants.  (*Id.*)  That is 13 times the number of plants needed to trigger the 60-month mandatory minimum sentence imposed by Congress for this offense.  Edgar lived at the grow site during this time and tended the plants on a daily basis, for 12 hours each day.  (PSR ¶ 14.)  However, it is neither the size of the marijuana grow nor the amount of money expected to be earned which sets this case apart from others.

This case is unique because of the brutal victimization of a minor girl, ZB, at the hands of Ryan

Balletto and Patrick Pearmain, the defendant's co-conspirators in marijuana cultivation. (PSR ¶ 30.) ZB had been lured to the grow site by Balletto, and while she was there, she was repeatedly raped and assaulted over a considerable time, including periods of confinement in a small metal tool box. (PSR ¶¶ 10, 30.) While the defendant did not participate in Balletto and Pearmain's abuse of ZB, his actions (and inaction) upon learning of that abuse support the agreed-upon sentence here.

As explained in the PSR, the defendant encountered ZB at the grow site when neither Balletto nor Pearmain were present. When the defendant encountered her, ZB was chained to a bed, with the chain extending to a collar around her neck. (PSR ¶ 30 (The PSR indicates that ZB was chained, but not the neck collar or the end-point of the chain.).) The defendant noted the existence of the chain, and he even asked ZB why she was there and why she was chained. (*Id.*) ZB explained the details of her situation, telling the defendant that she had been abused and raped by Balletto and Pearmain. The defendant remarked that the situation was similar to an infamous kidnapping case from many years earlier. However, in response to this horrifying revelation, the defendant did, essentially, nothing.

Having discovered that his co-conspirators were raping and abusing a teen-aged girl, the defendant did not attempt to rescue her. He did not make efforts to free her himself. He did not attempt to convince his co-conspirators to release her. He did not inform the authorities. Instead, he simply left the grow site and hitchhiked back to Los Angeles, a journey of several hundred miles.

A few days later, he told others about what he had discovered. Eventually, another person informed the LAPD of the defendant's story, and ZB was later rescued.[1] At any time between his discovery of ZB in Lake County and his telling the story to others in Los Angeles days later, the defendant could have simply called 911 anonymously and told the police what he had seen and learned. He chose not to. Instead, he travelled hundreds of miles over the course of days, leaving ZB in the hands of his co-conspirators – men he knew were raping and abusing her.

In the ordinary case, a person would not be held criminally responsible for failing to report violent crime. However, in a case such as this, where the violent crime is on-going, and perpetrated by the defendant's co-conspirators, it is appropriate to consider these facts in assessing a just punishment

---

[1] The person who informed the LAPD has not been identified in order to protect him/her from retaliation. That person was not the defendant, nor was that person acting at the defendant's direction.

for the defendant's participation in a criminal conspiracy. Therefore, an upward variance from 60 to 84 months is warranted in this case.

However, the government has considered that the defendant did eventually inform others of ZB's situation, and that this information (eventually) made its way to law enforcement. The government believes that the defendant should be given some credit for this. Thus, while the defendant was originally charged with his role in a conspiracy to manufacture and to possess with intent to distribute over 1,000 marijuana plants, which carries a mandatory minimum term of 120 months,[2] the government is not seeking that sentence here.

Moreover, Section 3553(a) also directs the Court to consider the history and characteristics of the defendant and the risk of the defendant committing further crimes. 18 U.S.C. §§ 3553(a)(1) and (2)(C). As noted by the Probation Officer, the defendant has a lengthy criminal history, stretching back over 24 years. While much of this criminal conduct is relatively minor, the defendant does have a prior conviction for providing narcotics to minors when he was 27 years old – a conviction which resulted in a six-year prison sentence and two parole revocations. (PSR ¶ 34.) The defendant also sustained a conviction and received a jail sentence for assault in which he used a knife to threaten victims and steal money from them. (PSR ¶ 39.) Finally, the defendant misused his then-employer's credit card, and he escalated the seriousness of his crime by threatening the employer and employer's family while the case against him proceeded. (PSR ¶ 40.) The defendant was on probation for this conviction when he committed the instant offense. (PSR ¶ 42.)

However, as described in detail in the PSR, the defendant suffered significant and long-lasting abuse as a child, and these factors should also be weighed in considering an appropriate punishment. (PSR ¶¶ 50-53.)

In considering all of the above information, the parties have agreed to jointly recommend a sentence of 84 months in this case. The government believes that this sentence adequately accounts for the defendant's conduct, the circumstances of the offense, the defendant's criminal history, and the

---

[2] The defendant's prior felony conviction for the use of a minor in connection with a drug crime, PSR ¶ 34, would likely increase this to a mandatory term of 240 months, had the government filed an information alleging this prior offense under 21 U.S.C. § 851.

defendant's mitigating personal background.  The U.S. Probation Officer has joined in the parties' recommendation.  In addition, the government has conferred with Z.B. about this outcome, and she is in agreement with a disposition along these lines for this defendant.  The government therefore respectfully requests that the Court vary upward from the Guideline range and sentence the defendant to 84 months in custody, with a 10-year term of supervised release to follow.

## CONCLUSION

For the reasons set forth above, as well as those set forth in the PSR, the government respectfully requests that the Court sentence the defendant to a term of 84 months of imprisonment, followed by 10 years of supervised release.

DATED: January 4, 2017                                   BRIAN J. STRETCH
                                                         United States Attorney


                                                              /s/
                                                         MATTHEW L. McCARTHY
                                                         Assistant United States Attorney

U.S. SENTENCING MEMORANDUM
CR 14-0275 CRB                                           6